FILED & JUDGMENT ENTERED
Steven T. Salata

Aug 22 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
WILKESBORO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 11-51047 |
| **KATHRYN STRUNK ROBINSON,** | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **KATHRYN ROBINSON and** | ) | |
| **SYLVIA FORBIS,** | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding |
| | ) | No. 12-5032 |
| v. | ) | |
| | ) | |
| **BRANCH BANKING AND TRUST** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
AND REMANDING CLAIMS TO STATE COURT**

This matter came before the court for hearing on the Motion
to Dismiss of Branch Banking and Trust Company ("BB&T") pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made
applicable to this proceeding by Rule 7012 of the Federal Rules
of Bankruptcy Procedure.  In its Motion to Dismiss, BB&T seeks

to dismiss the claims of Kathryn Robinson ("Debtor") and Sylvia Forbis ("Forbis," or, collectively with the Debtor, the "Plaintiffs") on the basis that they fail to state a claim upon which relief can be granted.   Based on its review of the pleadings and the arguments of counsel and for the reasons stated below, the court denies BB&T's Motion to Dismiss and remands this case to the Superior Court in Caldwell County.

### Findings of Fact

1.   On March 2, 2012, the Plaintiffs filed this action against BB&T in the Superior Court of Caldwell County, and on April 12, 2012, BB&T timely filed a notice of removal, removing all claims against BB&T to this court.   BB&T filed its Motion to Dismiss on April 19, 2012.

2.   According to the Plaintiffs' Complaint, in June of 2006 they obtained a "6 month term loan" from BB&T in the amount of $330,000 in order to purchase a new residence while trying to sell the house where they had been residing in Granite Falls. The Plaintiffs allege that they decided to move forward with the purchase of the new home and the sale of the Granite Falls home "[b]ased upon the promises, inducements and assurances of the Defendant."   The Debtor asserts that she advised BB&T that the note and deed of trust would need to be structured so that they could be paid from the income available to the household and that BB&T promised the Plaintiffs they would "work with them if

needed" to reduce the mortgage payment to an amount the Plaintiffs could afford.

3.   The Plaintiffs entered into two successive loan modifications with BB&T in 2007.  They sold the Granite Falls house and applied $80,000 in equity from the sale of that house to reduce the loan with BB&T.

4.   The Plaintiffs subsequently applied for an equity line with BB&T to enable them to make some repairs to their new home. According to the Plaintiffs, the loan was denied without explanation and, consequently, they begin to fall behind on their bills, which had a "devastating affect" on their credit score and further limited their ability to obtain credit to help with their bills.

5.   The Plaintiffs entered into a new note with BB&T in February 2009 that was secured by a deed of trust on their new home in Hickory, North Carolina. BB&T ultimately instituted foreclosure proceedings on the note and deed of trust, which led the Debtor to file for bankruptcy to prevent the loss of the home she owned jointly with Forbis.

6.   On August 24, 2011, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.  On her Schedule D, the Debtor listed BB&T as having a secured claim in the amount of $189,600 and a pre-petition arrearage in the amount of $11,550.   The Debtor did not indicate that these

claims were disputed, unliquidated, or contingent. In her initial filings, the Debtor did not list a claim against BB&T in her Schedule B or seek to exempt a claim against BB&T in her Schedule C.

7.   The Debtor filed her Chapter 13 Plan on September 7, 2011. The Debtor's Plan treats BB&T as a secured creditor with respect to its claim for the home loan. In addition, the Plan provides for ongoing post-petition monthly conduit payments to BB&T in the amount of $702 and for payment of a pre-petition arrearage in the amount of $11,500.

8.   BB&T filed a proof of claim in the Debtor's case on September 7, 2011, asserting a secured claim in the amount of $118,766.20 and a pre-petition arrearage claim in the amount of $14,353.21. The Debtor did not object to BB&T's proof of claim.

9.   On September 23, 2011, the Debtor filed an amended Schedule B to list a "potential claim against BB&T regarding mortgage lending issues" and an amended Schedule C to claim an exemption in the amount of $1.00 in the Debtor's potential claim against BB&T pursuant to N.C. GEN. STAT. § 1C-1601(a)(8).

10.   The court confirmed the Plan on October 18, 2011.

11.   The Plaintiffs filed a Complaint on March 2, 2012, to instigate this lawsuit against BB&T. In the Complaint, the Plaintiffs assert claims for (1) fraud/misrepresentation; (2) self dealing/predatory lending; (3) breach of contract; (4)

breach of fiduciary duty; and (5) unfair and deceptive trade practices. In short, Plaintiffs allege that BB&T's personnel promised to "work with them" regarding extensions of credit but ultimately "refused to agree to any reasonable modification." In their prayer for relief, the Plaintiffs seek compensatory, punitive, and treble damages; specific performance; costs, including attorney's fees; and a trial by jury.

12. BB&T has moved to dismiss the Plaintiffs' Complaint in light of the Debtor's prior bankruptcy proceedings. Specifically, BB&T argues that the Plaintiffs' Complaint should be dismissed on the basis of *res judicata*, equitable estoppel, and waiver because the Debtor did not object to BB&T's proof of claim or otherwise raise any issues with respect to BB&T's claim in the context of her bankruptcy case. In addition, BB&T asserts that the Plaintiffs' Complaint should be dismissed on the basis of judicial estoppel because the Debtor failed to list her claims against BB&T in the schedules and statements she filed with this court. Finally, BB&T has moved to dismiss the Plaintiffs' Complaint as failing to state a claim upon which relief can be granted.

13. In Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, the Plaintiffs plainly assert that the failure to include the Plaintiffs' claim in the Debtor's Chapter 13 Plan, schedules, or statements was due to inadvertence on the

5

part of the Debtor amounting to excusable neglect.  Therefore,
the Plaintiffs' Complaint should not be dismissed on the basis
of *res judicata*, equitable estoppel or waiver.  In addition, at
the hearing on this matter, the Debtor's bankruptcy counsel
indicated that he was aware of the Debtor's claims against BB&T
when he filed her Chapter 13 case but that he simply neglected
to include them in the Debtor's Chapter 13 filings.

## Conclusions of Law

14.  BB&T makes several procedural arguments claiming that
the Plaintiffs cannot bring these claims as a result of the
Debtor's filings with this court.  BB&T argues that the Debtor
is barred from bringing these claims because she did not object
to BB&T's proof of claim or list her claims against BB&T in her
schedules and statements.  Generally, the procedural concepts
BB&T cites, including judicial estoppel, waiver, and *res
judicata*, require litigants to adopt consistent positions when
appearing in front of various courts or in front of the same
court in various matters.

15. However, a review of the docket reveals that the
Debtor filed amended Schedules B and C on September 23, 2011,
specifically for the purpose of including these potential claims
against BB&T.  Surprisingly, BB&T overlooked that fact in its
Brief in Support of its Motion to Dismiss and in its argument at
the hearing on this matter.  Even more surprising, neither the

6

attorney for the Plaintiffs nor the attorney for the Debtor made the court aware of this fact in Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss or at the hearing on this matter.

16. All of the procedural bases asserted by BB&T for dismissal of the Plaintiffs' Complaint are dependent on the Debtor's failure to include her claims against BB&T in her schedules and statements. However, because the Debtor amended her schedules to include these potential claims against BB&T, the court finds that it must deny BB&T's Motion to Dismiss the Debtor's claims on the basis of *res judicata*, equitable estoppel, waiver, or judicial estoppel.

17. Without examining the merits of the Plaintiffs' complaint, the court concludes that it should abstain from the instant matter pursuant to 28 U.S.C. § 1334(c)(1) and remands the case back to state court. See In re Pac. Gas & Elec. Co., 279 B.R. 561, 567 (Bankr. N.D. Cal. 2002) (concluding that questions regarding abstention and remand may be addressed *sua sponte* by the Bankruptcy Court). Section 1334(c)(1) provides that a bankruptcy court may abstain from hearing a particular proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." The factors considered by courts in determining permissive abstention under § 1334(c)(1) include:

7

(1)  the court's duty to resolve matters properly before it;

(2)  the predominance of state law issues and non-debtor parties;

(3)  the economical use of judicial resources;

(4)  the effect of remand on the administration of the bankruptcy estate;

(5)  the relatedness or remoteness of the action to the bankruptcy case;

(6)  whether the case involves questions of state law better addressed by the state court;

(7)  comity considerations;

(8)  any prejudice to the involuntarily removed parties;

(9)  forum non conveniens;

(10) the possibility of inconsistent results;

(11) any expertise of the court where the action originated; and

(12) the existence of a right to a jury trial.

See Blanton v. IMN Fin. Corp., 260 B.R. 257, 265 (M.D.N.C. 2001).

18.  In analyzing the above factors, the court finds that they predominantly weigh in favor of permissive abstention under section 1334(c)(1).  First, under Stern v. Marshall, __ U.S. _____, 131 S.Ct. 2594 (2011), it appears that this court lacks

8

the authority to enter a final order or judgment on the Plaintiffs' claims such that it would be required to submit proposed findings of fact and conclusions of law to the District Court for its review and issuance of a final order or judgment. See Stern, 131 S.Ct. at 2620 ("The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.").  Although the Debtor is the plaintiff in this adversary proceeding rather than the defendant, her claims against BB&T are purely state law matters that exist independent of her bankruptcy case and do not need to be resolved in the process of ruling on BB&T's proof of claim. Given this court's lack of constitutional authority to enter a final order or judgment in this matter, it appears that it would be more economical and expeditious for it to be heard by the state court.

19.  In addition, because this case presents only issues of state law, remand will not have a significant effect on the administration of the bankruptcy estate, and the Plaintiffs have demanded a jury trial, the court concludes that this case should be remanded to the state court from which it was removed.

20. Thus, for the reasons stated above it is hereby **ORDERED** that:

(1)   BB&T's   Motion   to   Dismiss   the   Plaintiffs'   claims against BB&T is **DENIED;** and

(2)   the claims of the Plaintiffs are **REMANDED** to the North Carolina Superior Court in Caldwell County.

**SO ORDERED.**

**This Order has been signed electronically.      United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.**